IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ) ) ) | |
| Plaintiff,                            ) | Civil Action No. 16-225 |
| )  v.                                   ) | Judge Cathy Bissoon |
| ) SCOTT MEDICAL HEALTH CENTER, ) P.C.,                                   ) ) | |
| Defendant.                         ) | |

## MEMORANDUM ORDER

The United States Equal Employment Opportunity Commission ("the EEOC" or "the Commission") brings this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") on behalf of Dale Baxley, a gay male employed and allegedly constructively discharged by Scott Medical Health Center, P.C., ("Defendant"), due to an allegedly sexually hostile work environment perpetuated by Defendant's telemarking manager, Robert McClendon. See generally, Compl. (Doc. 1). Defendant moves to dismiss Plaintiff's Complaint on two grounds -- first, that pursuant to Federal Rule of Civil Procedure 12(b)(1), the "Court lacks jurisdiction to hear this matter due to Plaintiff's failure to comply with the procedural requirements of Title VII," (Def's Mot. (Doc. 11) at ¶ 2), and second, that pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiff has failed to establish a claim on which relief can be granted because, Defendant argues, Title VII does not protect discrimination on the basis of sexual orientation. Id. at ¶ 10. For the reasons below, Defendant's Motion to Dismiss will be denied.

### I.   MEMORANDUM

**BACKGROUND**

From mid-July until on or about August 19, 2013, Dale Baxley was employed by Defendant in a telemarketing position. (Doc. 1) at ¶ 11(a) and (g). At all times relevant to the Complaint, Robert McClendon was Defendant's telemarketing manager. Id. at ¶ 11(b). The Commission alleges that, through Mr. McClendon's discriminatory behavior, Defendant "engaged in sex discrimination against Baxley by subjecting him to a continuing course of unwelcome and offensive harassment because of his sex." Id. at ¶ 11(c). Furthermore, Plaintiff alleges, the "harassment was of sufficient severity and/or pervasiveness to create a hostile work environment because of [Mr. Baxley's] sex." Id.

Specifically, the Complaint alleges Mr. McClendon "routinely made unwelcome and offensive comments about [Mr.] Baxley, including but not limited to regularly calling him 'fag,' 'faggot,' 'fucking faggot,' and 'queer,' and making statements such as 'fucking queer can't do your job.'" Id. at ¶ 11(d). Plaintiff alleges these type of harassing comments were made "at least three to four times a week." Id. Additionally, according to the allegations in the Complaint, "upon learning that [Mr.] Baxley is gay and had a male partner …, [Mr.] McClendon made highly offensive statements to [Mr.] Baxley about [Mr.] Baxley's relationship with the partner such as saying, 'I always wondered how you fags have sex,' 'I don't understand how you fucking fags have sex,' and 'Who's the butch and who is the bitch?'" Id. at ¶ 11(e).

On March 1, 2016, the EEOC instituted this action following an investigation of charges of discrimination brought by five of Mr. Baxley's female former co-workers (the "Charges"). Id. at ¶ 6. In those Charges, the employees alleged they had been subjected to discrimination because of sex. Specifically, the Charges allege that Mr. McClendon subjected the

"Complainants to sexual harassment and unwanted touching so frequently and severely that it created a hostile and offensive work environment and resulted in adverse employment decisions being taken against them." Fullard EEOC Charge, (Doc. 12-1) at ¶ 9; see also Griffie, Mackie, Wieczorek and Eber EEOC Charges (Docs. 12-2 – 12-5).

During the course of the EEOC's investigation of these Charges, it learned that this alleged harassment extended to Mr. Baxley, and learned of Mr. Baxley's allegation of constructive discharge. (Doc. 1) at ¶ 6. On July 22, 2015, the Commission issued Letters of Determination to Defendant "finding reasonable cause to believe that Title VII was violated" with regards to the Charging parties, and also stating:

> Investigation also revealed that [Mr.] McClendon harassed a male employee because of sex, specifically and repeatedly referring to the male employee as a "faggot," and repeatedly asking about the employee's sexual experiences and preferences. The investigation revealed that [Mr.] McClendon targeted this male employee because he did not conform to what [Mr.] McClendon believed was acceptable or expected behavior for a male because of his association with members of the same sex rather than the opposite sex. The harassment created a work environment that was both subjectively and objectively hostile and intolerable because of sex, male. The male employee complained about [Mr.] McClendon's conduct directly to the President/Chief Executive Officer, who shrugged it off and took no action at all to stop the harassment, which continued. [Defendant's] failure to engage in prompt and effective action in response to the ongoing harassment resulted in the male employee's constructive discharge when he quit in August 2013.

Fullard Determination, (Doc. 12-6) at 2; see also Griffie, Mackie, Wieczorek and Eber Determination Letters (Docs. 12-7 – 12-10). The EEOC then provided Defendant an opportunity to remedy the discriminatory practices described in the Letter of Determination. (Doc. 1) at ¶ 8. According to the Complaint, the EEOC was unable to reach a conciliation agreement with Defendant that the EEOC found acceptable. Id. at ¶ 9. On September 15, 2015, the EEOC issued to Defendant a Notice of Failure of Conciliation. Id. at ¶ 10. This lawsuit followed.

**ANALYSIS**

Defendant's first basis for urging the Court to dismiss Plaintiff's case relates to what Defendant believes are the EEOC's procedural deficiencies in bringing this suit – deficiencies, Defendant argues, that render the Court unable to hear the dispute for want of subject matter jurisdiction.  See Def.'s Br. (Doc. 12) at 4-11.  Defendant argues that the EEOC can only litigate claims that have been subjected to the full administrative process required by Title VII and that the EEOC did not abide by the proper process in this case.  As part of that procedural deficiency, Defendant argues, the EEOC's suit is untimely.

The Supreme Court has clarified that the "EEOC is not acting as a proxy for discrimination victims but instead acts on its own authority to vindicate the public interest in eliminating workplace discrimination."  EEOC v. Waffle House, Inc., 534 U.S. 279, 286-88, 296 (2002).  Title VII establishes a number of preconditions that must occur in order for the Commission to bring a lawsuit on its own behalf.  42 U.S.C. § 2000e-5(b), (f)(1).  First, the EEOC must receive a charge filed on behalf of an employee alleging workplace discrimination. Id.  Next, the EEOC must provide notice of the charge to the employer.  Id.  Then, the EEOC must conduct an investigation into the charge.  Id.  After its investigation, the EEOC must make a reasonable cause determination.  Id.  And finally, if the EEOC determines reasonable cause exists, it must engage in conciliation efforts.  Id.  Only once all of these preconditions have been met can the EEOC file suit.  Id.  The EEOC has completed each of these prerequisites in the instant case.  (Doc. 1) at ¶¶ 6-10.

Defendant would have this Court apply an interpretation of Title VII that imposes identical procedural requirements on the EEOC suing in its own name as the statute imposes on

private plaintiffs. The statute does not support such a reading.[1] See EEOC v Caterpillar, Inc., 409 F.3d 831 (7th Cir. 2005); EEOC v. General Electric Co., 532 F.2d 359 (4th Cir. 1976); EEOC v. Hearst Corp., Seattle Post-Intelligencer Div., 553 F.2d 579 (9th Cir. 1976); EEOC v. Huttig Sash & Door Co., 511 F.2d 453 (5th Cir. 1975).

Rather, the case law clearly provides that the EEOC's authority is defined by the "reasonable investigation" standard. See EEOC v. Kronos, 620 F.3d 287, 297 (3d Cir. 2010) ("Once the EEOC begins an investigation, it is not required to ignore facts that support additional claims of discrimination if it uncovers such evidence during the course of a reasonable investigation of the charge.") (citing Gen. Tel. Co. of the N.W., Inc. v. EEOC, 446 U.S. 318, 331 (1980) ("Any violations that the EEOC ascertains in the course of a reasonable investigation of the charging party's complaint are actionable.") and EEOC v. General Electric, Co., 532 F.2d 359, 364-65 (4th Cir. 1976) ("[T]he original charge is sufficient to support action by the EEOC … for any discrimination stated in the charge itself or developed in the course of a reasonable investigation of that charge…")). Here, the EEOC learned of Mr. McClendon's alleged

---

[1] To the contrary, the Court of Appeals for the Seventh Circuit has explained:

> The difference between the two classes of case is that exhaustion of administrative remedies is an issue when the suit is brought by a private party but not when the Commission is the plaintiff. Were the private party permitted to add claims that had not been presented in the administrative charge filed with the EEOC, the Commission's informal procedures for resolving discrimination charges … would be by-passed, in derogation of the statutory scheme. That is not an issue when the EEOC itself is the plaintiff, which is why a suit by the EEOC is not confined "to claims typified by those of the charging party," and why Caterpillar is mistaken to think that the EEOC's complaint must be closely related to the charge that kicked off the Commission's investigation. "Any violations that the EEOC ascertains in the course of a reasonable investigation of the charging party's complaint are actionable." The charge incites the investigation, but if the investigation turns up additional violations the Commission can add them to its suit.

EEOC v Caterpillar, Inc., 409 F.3d 831, 832-33 (7th Cir. 2005) (internal citations omitted).

harassment of Mr. Baxley in the course of its "reasonable investigation" into charges of discrimination and harassment brought by his co-workers.

Defendant argues that the EEOC must file a new charge on behalf of a claimant when the allegations raised in the original charge are different from the alleged wrongdoing the EEOC has uncovered through its investigation, "such as racial discrimination claims discovered in the course of investigating a disability discrimination charge." (Doc. 38) at 7. Defendant misses the mark. Mr. Baxley's claims do *not* involve a different type of discrimination. The EEOC alleges that Mr. McClendon discriminated against and harassed Mr. Baxley "because of sex." The original charges that led to the EEOC's investigation alleged the very same. That the precise form of the sex discrimination and/or harassment may have differed from individual to individual does not alter this conclusion.

Defendant also argues that the EEOC did not file its Complaint within the appropriate timeframe. (Doc. 12) at 13-16. Defendant further contends that, due to the delay, it had insufficient notice of the investigation into Mr. McClendon's discrimination of Mr. Baxley and that it "was denied fundamental fairness, as it did not receive prompt notice, and it was not given an opportunity to gather and preserve evidence in anticipation of potential court action." (Doc. 12) at 16. The Commission responds by noting that the only timeframe discussed in the statute applies to private litigants, not the EEOC itself. See Pl.'s Br. (Doc. 16) at 24-25.[2]

The Court agrees with the EEOC that there is no relevant statute of limitations when the EEOC sues in its own name. See Occidental Life Ins. Co. v. EEOC, 432 U.S. 355 (1977) (finding no time limitation imposed on the EEOC when filing a suit on its own behalf in an action where the EEOC filed suit approximately three years after the initial Charge and five

---

[2] The Court's citations to Plaintiff's briefing reference the ECF Docket page number rather than the page number on the document itself.

months after conciliation efforts failed).  As discussed, the only preconditions to the EEOC filing suit are those five that are discussed above.  The EEOC has alleged sufficient facts in its Complaint that establish it has fully complied with those statutory prerequisites.

Moreover, Defendant's contention that it had insufficient notice of the EEOC's investigation into Mr. McClendon's alleged harassment of Mr. Baxley is belied by the facts asserted by the Commission.  The Commission responds that, not only did the EEOC put Defendant on notice regarding the potential for a suit related to Mr. Baxley in its reasonable cause determination letters, but the EEOC's investigator requested Mr. Baxley's personnel file in connection with the investigation, met with Defendant's Chief Executive Officer to ask questions about Mr. Baxley's complaints, and informed Defendant's counsel that additional victims, including Mr. Baxley, had been uncovered during the course of the investigation and provided those names.  See Rodia Declaration (Doc. 16-2) at ¶¶ 6-9 ("I specifically informed Mr. Saul that I was recommending that the cause of the finding include harassment of Mr. Baxley because of his sex in violation of Title VII.")  Assuming *arguendo* that Title VII imposes notice requirements beyond the statutory prerequisites (and the Court notes that Defendant has provided no authority that it does), the Court views the notice alleged here to be more than sufficient to alert Defendant to the likelihood of a suit on behalf of Mr. Baxley.[3]

Accordingly, Defendant's Motion to Dismiss on the ground that this Court lacks subject matter jurisdiction will be denied.

Defendant additionally asks the Court to dismiss Plaintiff's Complaint for failure to state a cause of action, arguing that Title VII does not prohibit discrimination based on sexual orientation.  (Doc. 12) at 17.  Defendant cites Bibby v. Philadelphia Coca-Cola Bottling, Co.,

---

[3] It also should be noted that, to the extent that any notice is required – and the Court is not persuaded that it is – the amount of notice provided to Defendant is an issue of fact, in any event.

260 F.3d 257 (3d Cir. 2001) and Prowel v. Wise Business Forms, Inc., 579 F.3d 285 (3d Cir. 2009) in support of its position, arguing the Court of Appeals for the Third Circuit has consistently held Title VII cannot be extended in this fashion. (Doc. 12) at 17. The EEOC responds that "[t]he lack of an express reference to sexual orientation in the statutory text is not controlling." (Doc. 16) at 5. The EEOC puts forth what it sees to be three lines of analysis to demonstrate why Title VII covers the type of sexual harassment that Mr. Baxley was subjected to in this matter:

> (1) [Mr.] Baxley was targeted because he is a male, for had he been female instead of a male, he would not have been subject to discrimination for his intimate relationships with men; (2) [Mr.] Baxley was targeted and harassed because of his intimate association with someone of the same sex, which necessarily takes Baxley's sex into account; and (3) [Mr.] Baxley was targeted because he did not conform to his harasser's concepts of what a man should be or do.

Id. The Court views this as the same argument articulated in three different ways, with the singular question being whether, but for Mr. Baxley's sex,[4] would he have been subjected to this discrimination or harassment. The answer, based on these allegations, is no.

The Court holds Title VII's "because of sex" provision prohibits discrimination on the basis of sexual orientation. Accordingly, the EEOC's Complaint stating that Mr. Baxley was discriminated against for being gay properly states a claim for relief. The Court sees no meaningful difference between sexual orientation discrimination and discrimination "because of sex."

The Supreme Court has consistently applied a broad interpretation of the "because of sex" language in Title VII. Incremental changes have over time broadened the scope of Title

---

[4] The Court, fully acknowledging the terms "sex" and "gender" are meaningfully different, for the purposes of this Memorandum Order, will use the terms interchangeably, noting that much of the precedent interpreting this provision of Title VII similarly conflates the two terms.

VII's protections of sex discrimination in the workplace.  See Newport News Shipbuilding and Dry Dock Co. v. EEOC, 462 U.S. 669, 682 (1983) ("Male as well as female employees are protected against discrimination."); Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 66 (1986) ("[P]laintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment"); Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 82 (1998) ("[W]e conclude that sex discrimination consisting of same-sex sexual harassment is actionable under Title VII."); Price Waterhouse v. Hopkins, 490 U.S. 228, 250 (1989) ("In the specific context of sex stereotyping, an employer who acts on the basis of a belief that a women cannot be aggressive, or that she must not be, has acted on the basis of gender."); see also Smith v. City of Salem, Ohio, 378 F.3d 566 (6th Cir. 2004) (applying Title VII's prohibition on sex stereotyping to harassment of a transgender individual).

In Oncale, the Supreme Court acknowledged that while same sex-harassment likely was not contemplated by Congress when enacting Title VII, it is nonetheless covered under the "because of sex" provision.  523 U.S. at 79-82.  "[S]tatutory prohibitions often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed."  Id. at 79; see also Harris v. Forklift Systems, Inc., 510 US 17, 25 (1993) (GINSBURG, J., concurring) ("The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.").

The Supreme Court's decision in Price Waterhouse, informs and controls the instant analysis.[5] In Price Waterhouse, the Supreme Court evaluated whether Price Waterhouse acted impermissibly in denying promotion to Ann Hopkins because she was too "macho." 490 U.S. at 235. Ms. Hopkins was told that in order to attain partner status she needed to "walk more femininely, talk more femininely, dress more femininely, wear make-up, have [her] hair styled, and wear jewelry." Id. Put simply, Ms. Hopkins did not conform to the partnership's expectations of what a woman should be. As the Supreme Court noted, "if an employee's flawed interpersonal skills can be corrected by a soft-hued suit or a new shade of lipstick, perhaps it is the employee's sex and not her interpersonal skills that has drawn the criticism." Id. at 256. Thus:

> We are beyond the day when an employer could evaluate employees by assuming or insisting that [employees] matched the stereotype associated with their group, for "'[i]n forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes.'"

Id. at 251 (citing Los Angeles Dept. of Water and Power v. Manhart, 435 U.S. 702, 707, n. 13 (1978)).

There is no more obvious form of sex stereotyping than making a determination that a person should conform to heterosexuality. As the EEOC states, "[d]iscriminating against a

---

[5] The Court also finds compelling EEOC and *amici curiae*'s arguments that the same standard and reasoning that applies when examining cases involving interracial associations also applies in this context. See e.g., Floyd v. Amite Cnty. Sch. Dist., 581 F.3d 244, 249 (5th Cir. 2009) ("This court has recognized that § 1981 and Title VII prohibit discrimination against an employee on the basis of a personal relationship between the employee and a person of a different race."); Holcomb v. Iona Coll., 521 F.3d 130, 138 (2d. Cir. 2008) (same); Parr v. Woodmen of World Life Ins. Co., 791 F.2d 888, 892 (11th Cir. 1986) (same); see also Price Waterhouse, 490 at 243, n.9 (noting that Title VII "on its face treats each of the enumerated categories exactly the same"). That this rationale is not discussed more fully in no way implies that the Court rejects this line of reasoning. The opposite is true. Only because the Court finds the sex stereotyping rationale sufficiently compelling and dispositive, does it not examine fully the "association" line of cases and how they would apply here.

person because of the sex of that person's romantic partner necessarily involves stereotypes about 'proper' roles in sexual relationships – that men are and should only be sexually attracted to women, not men." (Doc. 16) at 11-12.  This discriminatory evil is more than reasonably comparable to the evil identified by the Supreme Court in Price Waterhouse.  Indeed, the Court finds discrimination on the basis of sexual orientation is, at its very core, sex stereotyping plain and simple; there is no line separating the two.  Contra Prowel, 579 F.3d at 291 ("[T]he line between sexual orientation discrimination and discrimination "because of sex" can be difficult to draw.").  It is, in the view of the undersigned, a distinction without a difference.  Forcing an employee to fit into a gendered expectation – whether that expectation involves physical traits, clothing, mannerisms or sexual attraction –constitutes sex stereotyping and, under Price Waterhouse, violates Title VII.  Simply put, Mr. McClendon's alleged conduct toward Mr. Baxley "stemmed from an impermissibly cabined view of the proper behavior" of men.  Price Waterhouse, 490 U.S. at 236-37.

     Moreover, and for reasons discussed more fully *infra*, the Court does not view Bibby as dispositive.  C.f. Bibby, 260 F.3d at 261 ("Title VII does not prohibit discrimination on the basis of sexual orientation.").  As noted by the EEOC, the Court of Appeals in Bibby was not presented with the same arguments or analytical framework as that put forth by the EEOC in this case. (Doc. 16) at 20.  The Bibby plaintiff did not make any argument that sexual orientation discrimination is sex stereotyping.  See generally Brief for Appellant, 2001 WL 34117874.  Additionally, the Plaintiff in Bibby failed to raise the question of how the impact of interracial association case law could impact the analysis of a sexual orientation discrimination case.  Id.  "In other words, it appears that in Bibby all parties simply assumed there was a legal distinction between discrimination "because of sex" and sexual orientation discrimination." (Doc. 16) at 20.

Additionally, since the publications of Bibby and Prowel, district courts throughout the country have endorsed an interpretation of Title VII that includes a prohibition on discrimination based on sexual orientation.  See Isaacs v. Felder Services, LLC, 2015 WL 6560655, *1193 (M.D. Ala. Oct. 29, 2015) (holding claims of sexual orientation-based discrimination cognizable under Title VII); Terveer v. Billington, 34 F. Supp. 3d 100 (D.D.C. 2014) (same); Heller v. Columbia Edgewater Country Club, 195 F. Supp. 2d 1212, 1222 (D. Or. 2002) ("Nothing in Title VII suggests that Congress intended to confine the benefits of that statute to heterosexual employees alone."); see also Videckis v. Pepperdine Univ., 2015 WL 8916764 (C.D. Cal. Dec. 15, 2015) (finding sex discrimination necessarily includes sexual orientation discrimination under Title IX).

Furthermore, there have been significant intervening legal developments that call into question how the Court evaluated Title VII in Bibby.  First, the principles of statutory interpretation relied on by the Court of Appeals in Bibby have since been revisited and revised, rendering suspect Bibby's statutory analysis.  Bibby relied heavily on Congressional inaction on the Employment Non-Discrimination Act, which would have explicitly covered sexual orientation discrimination, as a means of justifying its ultimate conclusion that Title VII does not cover sexual orientation discrimination.  However, subsequent Third Circuit decisions have questioned the value of reliance on Congressional inaction.  See In re Visteon Corp., 612 F.3d 210, 230 (3d Cir. 2010) ("Evidence of congressional inaction is generally entitled to minimal weight in the interpretive process.")  But, perhaps more importantly, much of the Title VII precedent relied on by the Court of Appeals in Bibby either predated Price Waterhouse or contained little to no analysis, merely accepting as a given that Title VII did not cover sexual orientation discrimination.  See generally Bibby 260 F.3d at 261.

The Supreme Court's recent opinion legalizing gay marriage demonstrates a growing recognition of the illegality of discrimination on the basis of sexual orientation.  See Obergefell v. Hodges, 135 S.Ct. 2584, 2590 (2015) ("[N]ew insights and societal understandings can reveal unjustified inequality within our most fundamental institutions that once passed unnoticed and unchallenged.").  That someone can be subjected to a barrage of insults, humiliation, hostility and/or changes to the terms and conditions of their employment, based upon nothing more than the aggressor's view of what it means to be a man or a woman, is exactly the evil Title VII was designed to eradicate.  Because this Court concludes that discrimination on the basis of sexual orientation is a subset of sexual stereotyping and thus covered by Title VII's prohibitions on discrimination "because of sex," Defendant's Motion to Dismiss on the ground that the EEOC's Complaint fails to state a claim for which relief can be granted will be denied.[6]

## II.   ORDER

For the reasons stated above, Defendant's Motion to Dismiss (Doc. 11) is DENIED.

IT IS SO ORDERED.


November 4, 2016                                         s/Cathy Bissoon
                                                         Cathy Bissoon
                                                         United States District Judge

---

[6] Moreover, the Court would be remiss to ignore the very sexual nature of several of the comments allegedly made by Mr. McClendon to Mr. Baxley.  Even leaving everything discussed above aside, these comments are of the type that routinely have been found to give rise to actionable sexual harassment claims under Title VII.  See Andrews v. City of Phila., 895 F.2d 1469, 1482 n. 3 (3d Cir.1990) ("the intent to discriminate on the basis of sex in cases involving ... sexually derogatory language [ ] should be recognized as a matter of course."); Steiner v. Showboat Operating Co., 25 F.3d 1459, 1463 (9th Cir. 1994) (finding comments that were "sexually explicit, offensive, highly derogatory, and publicly made" created an impermissibly hostile work environment under Title VII).

cc (via ECF email notification):

All Counsel of Record